Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 948 | **DATE** | 2/26/2003 |
| **CASE TITLE** | Goodman P. Goodman vs. Donald N. Synder, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 3/25/2003 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Defendants' motion for summary judgment (104-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 27 2003 | 123 |
| | Docketing to mail notices | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge | | | |
| | | 03 FEB 26 PM 2:37 | date mailed notice | |
| SLB | courtroom deputy's initials | | | |
| | | central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE P. GOODMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 00 C 0948 |
| v. ) | |
| ) | Judge George W. Lindberg |
| DONALD N. SNYDER, JR., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff George P. Goodman, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this action pursuant to 42 U.S.C. § 1983, claiming that defendant IDOC officials Donald N. Snyder, Jr., William Fontaine, James Page, Jerome Springborn, Stephen Mote, Theodore Fredericks, Eric Michalek, and Nancy Ferguson violated his First Amendment right to free exercise of his religion, and violated his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA"); and that defendants Mote, Fredericks, Michalek, and Ferguson retaliated against him for practicing his religion and pursuing administrative and judicial relief against prison officials. Before this court is defendants' motion for summary judgment. For the reasons stated below, the motion is denied.

### I.  Factual Background

Plaintiff, an IDOC inmate, is a member of the Wiccan religion. Plaintiff interprets the tenets of Wicca to require him to follow a lacto-ovo vegetarian diet. A lacto-ovo vegetarian diet excludes meat, poultry, and fish, but includes dairy products and eggs. Plaintiff first requested a vegetarian diet in 1999 in Stateville Correctional Center. Stateville did not offer a lacto-ovo

vegetarian diet to the general population, but did offer the more restrictive vegan diet. A vegan diet excludes dairy products and eggs, as well as meat, poultry, and fish. At Stateville, plaintiff was allowed a vegan diet, but, according to plaintiff, was not allowed to supplement it with eggs and dairy products purchased with his own money through the commissary. Plaintiff currently resides at Menard Correctional Center. According to defendants, at Menard plaintiff is allowed either a lacto-ovo vegetarian diet, or a vegan diet, which he may supplement with foods purchased with his own money through the commissary. Plaintiff denies that he is allowed a lacto-ovo vegetarian diet, or that he is allowed to supplement a vegan diet at Menard.

Also in 1999, plaintiff requested a deck of tarot cards to use to practice his religion. Plaintiff's request was denied.

On November 16, 2000, the original defendants in this case moved for summary judgment. On June 29, 2001, this court granted defendants' motion in part, and denied it in part. At that time, the court proposed to grant summary judgment for *plaintiff* on his claims of denial of a lacto-ovo vegetarian diet and denial of tarot cards. The court granted defendants leave to show why summary judgment should not be entered in plaintiff's favor on those issues. On July 30, 2001, this court denied defendants' motion to reconsider the June 29, 2001 order.

On August 9, 2001, defendant Nancy Ferguson, a Stateville Correctional Officer, came to plaintiff's cell to release him for a guest visit. According to plaintiff, Ferguson conducted a shakedown search of plaintiff's cell and canceled the guest visit when she observed that plaintiff had a towel and washcloth in plain view. Ferguson returned to plaintiff's cell five minutes later. After a discussion about a brillo pad, Ferguson released plaintiff for his visit. According to plaintiff, as he walked out of his cell, Ferguson told plaintiff that "if [he] wasn't a Satan worshiper, [he] wouldn't have such a bad attitude."

2

Plaintiff states that he then asked Ferguson for her full name, badge number, and a grievance form. On his way to his visit, plaintiff asked the main control officer to see Ferguson's supervisor to lodge a complaint. According to plaintiff, Ferguson heard plaintiff's request to see her supervisor, and went to her supervisor herself first. Ferguson charged plaintiff with assault, threats, intimidation, and insolence. According to Ferguson, during the discussion about the brillo pad, plaintiff had become angry and red in the face, and muttered curse words under his breath. In addition, according to Ferguson, plaintiff had aggressively brushed against her with his forearm. The supervisor ordered plaintiff to disciplinary segregation based on these charges. Plaintiff was found guilty of insolence, for having a verbal exchange with Ferguson. He was found not guilty of assault, threats, or intimidation. Plaintiff received fifteen days segregation, loss of telephone privileges, and three months commissary denial. Plaintiff was also removed from his job as commissary clerk.

Meanwhile, the parties in this case briefed the issue of whether summary judgment should be granted in plaintiff's favor on the issues of denial of a lacto-ovo vegetarian diet and denial of tarot cards. On November 28, 2001, this court denied summary judgment to plaintiff.

The next day, on November 29, 2001, defendant Mote, the Assistant Warden of Operations at Stateville, ordered defendant Fredericks, a Correctional Lieutenant, to shake down plaintiff's cell. According to defendants, Mote ordered the shakedown based on confidential information he received from another inmate, that plaintiff had received contraband while on a visit. Fredericks ordered defendant Michalek, a Correctional Officer, to assist in the shakedown.

Fredericks and Michalek confiscated watches, eyeglasses, a jean jacket, head phones, a calculator, a day planner and an emery board from plaintiff's cell or his person. Plaintiff alleges that Fredericks and Michalek also confiscated his wallet and that one of the officers removed

3

legal papers from his typewriter, tore them up, and threw them in the toilet. According to plaintiff, when Michalek removed plaintiff's glasses from his head, Michalek said "you won't be filing any more lawsuits if you can't see to type." Plaintiff was placed in segregation as a result of the shakedown. The confiscated items were sent to Stateville's property room, where they later disappeared.

Later that day, Fredericks and Michalek searched plaintiff's cell again. According to plaintiff, Fredericks and Michalek ticketed him for possessing the property confiscated earlier that day, for possessing Christian cassette tapes in excess of the number of tapes allowed under IDOC rules, and for possessing legal documents belonging to another inmate. Plaintiff claims that the tapes were planted in his cell.

## II.   Analysis

As an initial matter, the court notes that defendants devote much of their brief in support of their summary judgment motion to rearguing issues that this court has previously decided. This court sees no reason to reconsider its prior decisions, and therefore the court will only address the new issues defendants raise.

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Once the moving party has sustained the initial burden, the opposing party may not rest upon the mere allegations or denials

4

of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

### A. First Amendment: Denial of Lacto-Ovo Vegetarian Diet and Tarot Cards

In this motion for summary judgment, defendants again attempt to justify their restrictions on plaintiff's diet and use of tarot cards as complying with the First Amendment. A regulation that encroaches upon an inmate's First Amendment rights will be upheld if there is a reasonable relationship between the regulation and legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987). Several factors are relevant to evaluating the reasonableness of a prison regulation impacting First Amendment rights:

> 1. whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule;
>
> 2. whether there are alternative means of exercising the right in question that remain available to prisoners;
>
> 3. the impact accommodation of the asserted constitutional right would have on guards and other inmates and on allocation of prison resources; and
>
> 4. although the regulation need not satisfy a least restrictive alternative test, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable.

Al-Alamin v. Gramley, 926 F.2d 680, 685 (7th Cir. 1991) (quoting Williams v. Lane, 851 F.2d 867, 877 (7th Cir. 1988)). Under this constitutional analysis, a standard of reasonableness applies to permit prison administrators "'to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration[,]' and thereby prevent unnecessary federal court involvement in the administration of prisons." Id. (quoting Turner, 482 U.S. at 89). However, as this court has previously noted, "a reasonableness standard is not

toothless." Goodman v. Carter, No. 2000 C 948, 2001 WL 755137, at *11 (N.D. Ill. July 2, 2001) (quoting Abbott v. Thornburgh, 490 U.S. 401, 414 (1989)).

1.   **Vegetarian Diet**

The court first turns to the question of whether an issue of material fact exists as to defendants' provision of a vegetarian diet. Defendants argue that this issue is now moot, because they are currently providing plaintiff with a vegan diet and allowing him to supplement this diet by purchasing items at the commissary. However, plaintiff denies that he is allowed to supplement his vegan diet. Therefore, the court cannot conclude that the vegetarian diet issue is moot as a matter of law.

Defendants also challenge the sincerity of plaintiff's religious beliefs with regard to the vegetarian diet, with evidence that on August 8, 2001, plaintiff was found in possession of three pouches of roast beef. Plaintiff responds that he bought the meat to trade with other inmates, and not for his personal consumption. There is an issue of material fact as to the sincerity of plaintiff's commitment to follow a vegetarian diet as part of his religion. Summary judgment is denied as to plaintiff's First Amendment claim relating to his diet.

2.   **Tarot Cards**

Defendants now argue that they are justified in prohibiting plaintiff's possession of tarot cards because some decks contain symbols similar to those used by gangs or other security threat groups in IDOC facilities. For example, some tarot cards have images of a pitchfork, a devil, crowns, and five-pointed stars. These symbols have been used by gangs such as the Folks, some Disciples groups, the Latin Kings, the Vice Lords, and the El Rukns. Defendants argue that some inmates could misinterpret the symbols on the tarot cards and assume plaintiff is a gang member. They also argue that tarot cards could be stolen and used as gang symbols.

The court must defer to defendants' expertise in the types of security threats that could be posed by gang members in IDOC facilities. However, as in their earlier motions for summary judgment, defendants fail to offer an explanation of why they choose to single out tarot cards, that is sufficient to support granting summary judgment in their favor. As plaintiff notes, the symbols on tarot cards are no more gang-related than other symbols found on objects that are permitted in IDOC facilities. For example, crucifixes and Christian crosses are objects and symbols that also are commonly used by gangs, but images of crosses are not banned in IDOC facilities. In addition, playing cards are permitted, even though they presumably contain symbols such as crowns.

Defendants also argue that accommodating plaintiff's use of tarot cards would create an impossible administrative burden on the prison. To prevent unauthorized use of the tarot cards, a member of the staff would have to escort plaintiff to the prison chaplain's office to use the cards. The staff member would have to stand guard until plaintiff was finished and then escort plaintiff back to his cell. According to defendants, this diversion of personnel would jeopardize the safety and security of the entire facility.

However, plaintiff has offered evidence that prison officials shoulder the administrative burden of allowing inmates to attend more mainstream religious services and Bible study with the prison chaplain, even if only a few prisoners take advantage of the opportunity. While prison officials need only make reasonable efforts to afford inmates an opportunity to practice their religion, they must be evenhanded. Alston v. DeBruyn, 13 F.3d 1036, 1039 (7th Cir. 1994). Plaintiff has raised an issue as to whether defendants' actions were evenhanded.

Finally, although defendants' regulation need not be the least restrictive alternative available, the existence of obvious, easy alternatives may be evidence that their regulation is

unreasonable. See Turner, 482 U.S. at 90. Defendants' witnesses concede that there are at least 150 different decks of tarot cards, using different symbols, and that they do not know whether a deck exists that does not contain symbols associated with gangs.

The court concludes that plaintiff has offered sufficient evidence to raise a factual issue as to whether defendants' regulation of tarot cards is reasonably related to the goal of maintaining prison security. According, summary judgment is denied on plaintiff's First Amendment claim relating to tarot cards.

### B. RLUIPA

Defendants' summary judgment motion also contends that their regulations on plaintiff's diet and use of tarot cards pass muster under the Religious Land Use and Institutionalized Persons Act.[1] The RLUIPA requires courts to conduct a heightened scrutiny analysis of prison regulations that burden the exercise of religion:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The statute defines "religious exercise" as any exercise of religion, whether or not compelled by, or central to, a system of religious belief. Id. § 2000cc-5(7)(A).

As this court has already discussed, plaintiff has met his burden of showing that he uses tarot cards and follows a lacto-ovo vegetarian diet in an exercise of his religion. Plaintiff has

---

[1] Defendants have recently challenged the constitutionality of the RLUIPA in a motion for judgment on the pleadings. The parties currently are briefing that issue, and the court will address it at a later date.

also sufficiently shown that defendants' denial of plaintiff's lacto-ovo vegetarian diet and use of tarot cards substantially burdens plaintiff's freedom to exercise his religion. Since the court has already determined that defendants' summary judgment motion fails under the comparatively less stringent "reasonable relation" test under the First Amendment, the court must conclude that defendants also fail to satisfy the heightened scrutiny of RLUIPA's "least restrictive means" test. Therefore, summary judgment is denied as to plaintiff's RLUIPA claim.

### C. Retaliation

Plaintiff claims that defendants retaliated against him for practicing his religion and for seeking relief in the IDOC grievance process and the judicial system. In order to survive a motion for summary judgment, a plaintiff must show that his protected conduct was a motivating factor behind the defendant's actions. Babcock v. White, 102 F.3d 267, 275 (7th Cir. 1996). In evaluating whether a plaintiff has met this burden, the court may appropriately consider the timing between the protected action and the alleged retaliatory act. See Harris v. Fleming, 839 F.2d 1232, 1238 (7th Cir. 1988). If a plaintiff meets that burden, the defendant may escape liability by showing that the same result would have been reached even in the absence of the plaintiff's protected conduct. See Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 287 (1977). Disputes that turn on an official's intent often are not amenable to disposition on summary judgment. See Crawford-El v. Britton, 523 U.S. 574, 599 (1998). Summary judgment also is inappropriate when the record is a "swearing contest." Babcock, 102 F.3d at 276.

Plaintiff bases his retaliation claim on actions taken on August 9, 2001 and November 29, 2001. On August 9, 2001, defendant Ferguson shook down plaintiff's cell, and charged plaintiff (falsely, according to plaintiff) with assault, threats, intimidation, and insolence. Ferguson is a Christian. Plaintiff states that he had previously told Ferguson that he was a Wiccan. According

to plaintiff, on various occasions since 1999, Ferguson had recited Bible verses to him, forced Christian pamphlets on him, and had told him that he is "the devil's spawn," is "in league with the devil," is "going to hell for not being saved," and that he is "going to burn in hell if [he] don't [sic] get saved, accept Jesus, and change [his] ways of religion."

Plaintiff states that at the end of the August 9, 2001 shakedown, Ferguson told him that he would not have such a bad attitude were he not a "Satan worshiper." Shortly after plaintiff indicated that he intended to file a grievance against her, Ferguson filed charges against him. Based on these charges, plaintiff received fifteen days segregation, loss of telephone privileges, three months commissary denial, and was removed from his job as commissary clerk. The court concludes that plaintiff has raised a material issue of fact as to whether a substantial motive for Ferguson's conduct was retaliation against plaintiff for practicing Wicca, or for taking steps to file a grievance against her.

Plaintiff also claims that defendants retaliated against him on November 29, 2001 for pursuing this lawsuit, by confiscating his personal property under the false pretense that it was contraband. This incident occurred the day after this court issued a ruling that material issues of fact remained as to plaintiff's diet and tarot card claims. According to plaintiff, during the November 29, 2001 shakedown, defendant Michalek told him that plaintiff would not be filing any more lawsuits if he could not see, as he confiscated plaintiff's glasses. In addition, one of the officers removed from plaintiff's typewriter two motions that plaintiff intended to file in this case, tore them up, and threw them in the toilet.

Defendants claim that Mote ordered the shakedown based on information that plaintiff was receiving contraband through his visitation privileges. However, plaintiff challenges Mote's credibility with evidence that Mote does not recall who provided the information, how the

information was transmitted to him, the nature of the contraband plaintiff allegedly received, or other particulars about the information on which Mote claims to have based his order. In addition, plaintiff disputes that the items confiscated actually were contraband, and asserts that he gave Fredericks and Michalek state-issued permits, receipts, and property inventory sheets for all items of property in question, demonstrating that he lawfully possessed those items. Plaintiff has raised a genuine issue of material fact as to his claim of retaliation based on the November 29, 2001 shakedown.

**ORDERED**: Defendants' motion for summary judgment [104-1] is denied.

ENTER:

George W. Lindberg
Senior U.S. District Judge

DATED: **FEB 2 6 2003**

11